JOSEPH & KIRSCHENBAUM LLP
Attorneys at Law

Charles Joseph
D. Maimon Kirschenbaum
Denise A. Schulman
Josef Nussbaum
Laura Reznick

32 Broadway, Suite 601
New York, NY 10004
Phone (212) 688-5640
Fax (212) 688-2548
www.JK-LLP.com

June 8, 2017

**VIA ECF**

Honorable Margo K. Brodie
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: **Marin v. APU Foods Corp.**
     **No. 17 CV 3224**

Dear Judge Brodie:

  We represent the Plaintiff in the above-referenced action. I write in response to Defendants' June 1, 2017 letter seeking a pre-motion conference regarding their anticipated motion to dismiss. Pursuant to Fed. R. Civ. P. 15(a), Plaintiff has filed an amended complaint, attached hereto as Exhibit 1, that moots Defendants' anticipated motion.

**I. The amended complaint adequately alleges that the Corporate Defendants constitute a single integrated enterprise/employer**

  Under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), a

> single employer situation exists where two nominally separate entities are actually part of a single integrated enterprise. . . Under this test, if distinct entities are deemed to constitute a single enterprise, liability for certain violations of employment law may be imposed on not only the nominal employer but also on another entity comprising part of the single integrated employer.

*Chimbay v. Pizza Plus at Staten Island Ferry, Inc.*, No. 15 CV 2000, 2016 U.S. Dist. LEXIS 32257, at *9 (S.D.N.Y. Mar. 14, 2016) (internal citations and quotation marks omitted); *see also Garcia v. Chirping Chicken NYC, Inc.*, No. 15 CV 2335, 2016 U.S. Dist. LEXIS 32750, at *20 (E.D.N.Y. Mar. 11, 2016). In determining whether companies constitute a single employer, a court

> examines the interrelation of operations, common management, centralized control of labor relations, and common ownership. Also relevant are the use of common office facilities and equipment and family connections between or

> among the various enterprises. . . . Ultimately, single employer status depends on all the circumstances of the case and is characterized by absence of an arm's length relationship found among unintegrated companies.

*Lihli Fashions Corp., Inc. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996) (quotation marks and citations omitted). The amended complaint alleges facts concerning most of these factors, and, therefore, sufficiently alleges that the Corporate Defendants are a single integrated enterprise.

The amended complaint alleges that the Corporate Defendants are all owned by Defendant Walter Burgos (Am. Compl. ¶ 11) and are subject to his common management (*Id.* at ¶ 19, 20, 23, 24). The Corporate Defendants have interrelated operations. They are all in the restaurant business, their liquor licenses identify the same principal (who is Defendant Burgos' daughter), the Riko restaurants have a single website, and Riko Sunnyside advertised Cumbia and Sabor on its Facebook page. (Am. Compl. ¶¶ 3-7, 12, 14-16.) *See Finkel v. Frattarelli Brothers, Inc.*, No. 05 CV 1551, 2008 U.S. Dist. LEXIS 46973, at *31 (E.D.N.Y. June 17, 2008) (having the same business purpose is indicative of interrelated operations). Centralized control of labor relations is demonstrated by the facts that the Corporate Defendants shared employees and paid employees in the same manner. (Am. Compl. ¶¶ 13, 17, 53.) *See Chimbay*, 2016 U.S. Dist. LEXIS 32257, at *10 (common pay practices and shared employees are indicative of centralized control of labor relations). These facts demonstrate the "absence of an arm's length relationship" and are more than sufficient to adequately state a claim that the Corporate Defendants constitute a single employer. *Lihli Fashions Corp., Inc.*, 80 F.3d at 747.

## II. The amended complaint adequately alleges that the Individual Defendants were Plaintiff's employers

The amended complaint adequately alleges that the Individual Defendants – Walter Burgos and Paula Andrea Gil – were Plaintiff's employers. In determining whether an individual is an employer under the FLSA or NYLL, courts apply an economic reality test. This includes consideration of the so-called *Carter* factors, namely,

> whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

*Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks omitted); *see also Flanigan v. Vulcan Power Group, LLC*, No. 14-4444, 2016 U.S. App. LEXIS 4680, at *8 (2d Cir. Mar. 15, 2016). All of these factors need not be satisfied to establish individual liability. In fact, courts often deny defendants' summary judgment motion when just two of these factors are satisfied. *E.g.*, *Wang v. LW Rest., Inc.*, 81 F. Supp. 3d 241, 255-256 (E.D.N.Y. 2015); *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 135 (S.D.N.Y. 2014). Under the FLSA, a court should also consider the putative employer's level of "operational control." *Irizarry*, 722 F.3d at 105-17. "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment." *Id.* at 110. Under these standards, the amended complaint contains sufficiently detailed information to state a claim for individual liability against both Defendants.

2

With respect to Defendant Burgos, the amended complaint alleges that he hired Plaintiff and a Cumbia and Sabor manager, satisfying the first *Carter* factor. (Am. Compl. ¶ 21.) The amended complaint alleges that Defendant Burgos supervised and controlled employees' conditions of employment by giving directions and instructions to employees. (*Id.* at ¶ 23.) The amended complaint also alleges that Defendant Burgos exercised authority over employees' pay by, for example, paying Plaintiff. (*Id.* at ¶ 22.) Defendant Burgos' alleged financial control of the restaurants is also indicative of operational control. (*Id.* at ¶¶ 20, 24.) As the amended complaint alleges specific facts that satisfy three of the *Carter* factors and alleges fact related to operational control, it states a claim for individual liability against Defendant Burgos.

With respect to Defendant Gil, the amended complaint alleges that she set employee schedules, including Plaintiff's schedule (*Id.* at ¶ 29); approved or denied vacation requests (*Id.* at ¶ 55); interviewed prospective employees (*Id.*); hired employees, including a woman named Adriana (*Id.* at ¶ 30); effectively fired Plaintiff by ceasing to schedule her (*Id.*); supervised employees by giving them orders and directions and controlling their station assignments (*Id.* at ¶ 28, 55); exercised authority over employees pay by, for example, paying Plaintiff (*Id.* at ¶ 31); and maintained employment records by requiring Plaintiff to sign a pay ledger acknowledging receipt of her wages (*Id.*). Thus, the amended complaint alleges specific facts that satisfy all of the *Carter* factors, and it states a claim for individual liability against Defendant Gil.

### III. The amended complaint adequately alleges minimum wage and overtime claims

Simple math shows that the amended complaint adequately pleads minimum wage and overtime claims. The amended complaint alleges that Defendants paid Plaintiff $40 per shift, and that her shifts lasted at least 8 hours. (Am. Compl. ¶¶ 46, 50.) That works out to an effective hourly rate of, at most, $5 per shift, which is less than the FLSA and New York minimum wages. 29 U.S.C. § 206; N.Y. Lab. L. § 652. The amended complaint also alleges that Defendants paid Plaintiff her shift pay, without any overtime premium, when she worked more than 40 hours per week. (Am. Compl. ¶ 51, 52.) The amended complaint alleges that Plaintiff worked more than 40 hours per week whenever she worked 5 or more shifts in a week. (*Id.* at ¶ 48.) The amended complaint specifically identifies Plaintiff's first week of work as one in which she worked at least 64 hours over 8 shifts and was paid $320, an effective hourly rate of no more than $5. (*Id.* at ¶¶ 48, 51.) Under the FLSA, Defendants were required to pay Plaintiff at least $551 for that week (minimum wage of $7.25 times 40 hours ($290) plus $7.25 times 1.5 times 24 hours ($261)). Thus, there is no basis to dismiss Plaintiff's minimum wage and overtime claims.

For the foregoing reasons, the amended complaint should not be dismissed. We thank the Court for its attention to this matter.

Respectfully submitted,

Denise A. Schulman

cc: Argilio Rodriguez, Esq.